# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

**NOV 26 2003**

Michael N. Milby, Clerk of Court

|  |  |  |
|---|---|---|
| CLAUDIO B. ARREDONDO AND | § | |
| ERNESTO G. SOLIS | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL ACTION NO. C-03-441** |
| | § | |
| VS. | § | |
| | § | |
| THE LINCOLN ELECTRIC | § | |
| COMPANY, ET AL | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION TO REMAND
## AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Claudio B. Arredondo and Ernesto G. Solis, Plaintiffs herein, and file this Motion to Remand and Brief in Support Thereof pursuant to 28 U.S.C. §1447(c), and in support thereof, would respectfully show unto this Court each of the following:

### I. INTRODUCTION

This Brief is in support of Plaintiffs' Motion to Remand pending action to state court. In brief, Removing Defendants' seek to dress themselves as federal agents doing noble work for the military when they are in fact profit-seeking private entities producing rather mundane, but toxic, welding materials that they have knowingly let sicken and maim the end users of their products.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 1 of 22

12.

The Removing Defendants primarily involved in removing these cases to federal court are: Lincoln Electric Company; The ESAB Group, Inc., Hobart Brothers Company, TDY Industries, Inc., The BOC Group, Inc. f/k/a Airco, Inc., Viacom, Inc., Successor by Merger to CBS Corporation f/k/a Westinghouse Electric Corporation, A.O. Smith Corporation, Sandvik, Inc., Airgas-Gulf States, Inc., Praxair, Inc., The Eutectic Corporation, Union Carbide Corporation and Union Carbide Corporation in its Capacity as the Successor in Interest to Union Carbide Chemicals and Plastics Company, Inc. ("Removing Defendants").

Turning to the specific legal issues before the Court, the Removing Defendants assert two bases for removal: (1) Federal Officer removal, and (2) Federal Enclave jurisdiction. Different grounds for removal are asserted but none of the grounds are sound.  With respect to Federal Officer removal:

- In all Federal Officer removal cases, the government contractor defense fails because the defense does not apply to failure-to-warn claims involving privately designed products.

- In all Federal Officer removal cases, the claim to Defense Production Act immunity fails because immunity does not apply to tort claims involving privately designed products.

## *II. ARGUMENT*

Federal courts are courts of limited jurisdiction.  Federal jurisdiction is not presumed to exist. Our federal system presumes that state courts are equally capable of deciding both state and federal issues. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *Douglas v. E.G. Baldwin and Associates, Inc.*, 150 F. 3d 604, 606 (6th Cir. 1998). "[D]ue regard for the rightful independence of state governments, which should actuate federal courts,

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 2 of 22

requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971), *quoting, Healy v. Ratta*, 292 U.S. 263, 270 (1934).  *See also Douglas, supra*, 150 F.3d at 606 (as courts of limited jurisdiction, federal courts may exercise only those powers authorized by statute).

Federal courts analyze challenges to subject matter jurisdiction at the outset of a case. "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue." *Douglas*, 150 F.3d at 606-07 (citations omitted).   To support removal, the Removing Defendants must show that the federal court would have had original jurisdiction over the action.  *Long v. Bando Manufacturing of America, Inc.*, 201 F.3d 754 (6th Cir. 2000).

The Removing Defendants bear the burden of establishing original jurisdiction. *Id., citing, Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). "Furthermore, because they implicate federalism concerns, removal statutes are to be narrowly construed." *Long*, 201 F.3d at 757, *citing, Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).   The right to remove is purely statutory.  Therefore, removal's procedural requirements, although not jurisdictional, are strictly interpreted to favor state court jurisdiction. *Id.* at 108-109.  Any defect in removal procedure requires remand.

This Brief first addresses removal based on Federal Officer status and Federal Enclave jurisdiction.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 3 of 22

## A. DEFENDANTS' ARE NOT ELIGIBLE TO REMOVE UNDER THE FEDERAL OFFICER REMOVAL STATUTE

The Removing Defendants' purported defenses under the Federal Officer removal statute are invalid for failure to satisfy *Mesa v. California's*, 489 U.S. 121 (1989), basic requirements of federal officer direction, causation and a colorable federal defense.

### 1. A Preliminary Word on Documentation and Overview of the Federal Officer Arguments

28 U.S.C. § 1442 allows removal of actions filed against federal officers or agencies. That section requires (1) federal supervision, (2) a causal nexus between a defendant's federally supervised actions, and (3) a colorable federal defense. Despite their assertions to the contrary, the Removing Defendants cannot satisfy any of these requirements for removal in the cases before the Court which they as much admit by conceding they have not investigated the merits of their defenses.

To satisfy the requirement of federal supervision, the Removing Defendants argue that the welding rods at issue were subject to specifications developed by the United States Navy and that Defendants were therefore acting as federal agents. This argument is factually incorrect. The welding consumables at issue were developed solely by Defendants. They are available to the general public. And they were not developed at the Navy's direction. The Navy played no substantive role whatsoever in Defendants' failure to warn of the dangers of manganese in welding fumes.

Nor can the Removing Defendants satisfy §1442's requirement of colorable federal defenses. Neither the Removing Defendants' government-

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 4 of 22

contract defense nor their Defense Production Act ("DPA") defense withstand scrutiny. As the case law demonstrates, the government's "rubber-stamp" approval of contractors' specifications does not satisfy the "reasonably-precise-specifications" prong of the government contractor. In addition, the government contractor defense does not apply in this failure to warn case.

The Removing Defendants' DPA defense also fails. The DPA merely shields a contractor from liability in a breach of contract case where the contractor's obligation to the government prevents it from meeting a supply order to a third party, the "impossibility-of-performance" defense. This is a tort case to which the DPA does not apply.

## 2. The Federal Officer Removal Statute Focuses on the Defendants' Answer

Federal Officer removal is not governed by the "well-pleaded complaint rule." *Mesa v. California*, 489 U.S. 121, 136-137 (1989). Rather, removability focuses on the "averment of a federal defense" in the federal officer's answer. *Mesa*, 489 U.S. at 135, *citing, Gaye v. Ruff*, 292 U.S. 25, 33-35 (1934). Thus, Federal Officers with a colorable federal defense may remove cases to federal court even "where no federal question is presented by the plaintiff." *Ryan v. Dow Chemical Company*, 781 F. Supp. 934, 939 (E.D. N.Y. 1992). This removal authority exists whether the defense is actual or merely "anticipated."

Here the Removing Defendants plainly knew of their anticipated federal defense from the time they received the Complaint. Their Answers establish the Removing Defendants' anticipated federally-based defenses.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 5 of 22

### 3. No Federal Jurisdiction Exists under the Government Contractor Defense or the Defense Production Act

Three requirements must be satisfied to support Federal Officer removal:

1) The removing defendant must be a federal officer or a "person" acting under a federal officer;

2) The removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under cover of federal office and the plaintiff's claims; and

3) The removing defendant asserts a colorable federal defense.

*Mesa v. California,* 489 U.S. 121 (1989); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387 (5th Cir. 1998); *see also Little v. Purdue Pharma, L.P.,* 227 F.Supp.2d 838, 860 (S.D. Ohio 2002). The Plaintiffs do not concede that the Removing Defendants satisfy *Mesa*'s first prong. But the Removing Defendants' noncompliance with the second and third prongs is so apparent that they provide sufficient grounds for remand.

### a. Federal Officers Did Not Direct Defendants

Compliance with *Mesa*'s second factor–the federal direction and nexus factor--depends on the degree of federal control and on whether the defendant acted specifically under federal direction in performing the tortious acts. *See Little, supra,* 227 F.Supp.2d at 860; *Guillory v. Ree's Contract Service, Inc.,* 872 F.Supp. 344 (S.D. Miss. 1994). The test requires that federal officials have "direct and detailed control" of the defendant. *Id.* at 347. Such direct and detailed control is not present in this case because the government purchased preexisting,

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 6 of 22

commercially available welding rods, not military-specific products. See Affidavit of Ernesto G. Solis, Exhibit "A".

The Plaintiffs' claims in these cases thus arise out of the manufacture and sale of welding rods that are available for purchase, use, and consumption on the open market. The welding rods were not exclusively used for military construction and were not specifically manufactured for military use. These welding rods are not military equipment, and nothing about them made their creation necessary to implement any strategic defense program. *Compare Ryan v. Dow Chemical Co.,* 781 F.Supp. 934 (E.D. New York MDL381, 1992) (direct-control requirement of federal officer statute was met where the manufacturers of Agent Orange were under the direct and detailed control of a Department of Defense administrative agency).

### b. *Federal Officers Did Not Prevent Defendants from Complying with Their Duty to Warn*

Federal direction is not the only thing that the Removing Defendants lack. They also fail to demonstrate any plausible claim of a sufficient nexus between their "government-related" activity and Plaintiffs' claims, as required by *Mesa*. This is a warnings case. The Navy did not prohibit the manufacturing Defendants from complying with their state- tort-law duty to warn against the dangers of inhaling manganese fumes while welding. In fact, the welding rods used in this case were purchased form local suppliers, off-the-shelf, in their standard commercial packaging.

In sum, the Navy procurement process, through which welding rods available for public use are sold to the military, provides no basis for removal.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 7 of 22

This argument has already been rejected. As one court stated, participation in a procurement program does not support removal under the federal officer removal statute:

> From the standpoint of federalism, the mere assertion of a nebulous federal procurement interest cannot, without further specification, be a basis for removal. Otherwise any state suit against a manufacturer whose product has at one time been diverted and adapted for military use–for example, a nuisance suit against a metal foundry– would potentially be subject to removal, seriously undercutting the power of the state courts to hear and decide basic tort law. Such a result is incompatible with respect owed to state courts under our federal system.

*Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 951 (E.D. N.Y. 1992).

### c. Agent Orange Compared

The development of Agent Orange by the U.S. Military provides an excellent illustration of a true federal interest in a warnings case removed under the federal officer removal statute. The history of Agent Orange is discussed in detail in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998). Comparing the Fifth Circuit's Agent Orange analysis in *Winters* with the undisputed facts regarding the Navy's procurement of welding rods, supports the conclusion that no federal interest supports removal of the instant cases. These two situations differ in (1) the origins of the products, (2) the legal implications of not supplying the products, (3) the availability of the products for purchase by the public, and (4) the government's involvement in the warnings-label process.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 8 of 22

<u>(1) The Origins of the Products</u>

**Agent Orange:**  The defense department contracted directly with the manufacturing chemical companies for a specific mixture of herbicides which eventually became know as Agent Orange. *Winters*, 149 F.3d at 398.

**Welding Rods:**  The Defendants' welding rods were purchased from local suppliers from commercially available stock.

<u>(2) The Legal Implications of Not Supplying the Products</u>

**Agent Orange:**  Agent Orange's manufacturers were compelled to deliver Agent Orange to the government under threat of criminal sanctions. *Winters*, 149 F.3d at 398.

**Welding Rods:**  The Defendant's welding rods were purchased from local suppliers from commercially available stock.

<u>(3) The Availability of the Products for Purchase by the Public</u>

**Agent Orange:**  Agent Orange's distributors never manufactured or registered it for use by the general public. *Winters*, 149 F.3d at 399.

**Welding Rods:**  The welding rods at issue in the instant case are available for purchase by the general welding public.

<u>(4) The Government's Involvement in the Warnings-Label Process</u>

**Agent Orange:**  The government-inspected Agent Orange drum labels and allowed nothing on the drums other than what the government specified. No warning was placed on the containers, and none was permitted by the contract specifications. *Winters*, 149 F.3d at 399.

**Welding Rods:**  The labels on the welding rods were created by the Defendants with no government input.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 9 of 22

The government thus exercised the degree of detailed control over the production, formulation, and labeling of Agent Orange necessary to support federal-officer removal. In these welding rod cases, in contrast, such control is lacking. The Navy simply purchased welding rods from local suppliers just like any other consumer.

In prior cases, the Removing Defendants have argued that the Plaintiffs are simply asserting an "off-the-shelf" argument that was in *Winters* and in *Miller v. Diamond Shamrock,* 275 F.3d 414 (5th Cir. 2001). In *Winters,* the plaintiffs argued that the *component chemicals* used to create Agent Orange were purchased off-the-shelf. *Miller,* 275 F.3d at 419. Essentially, the plaintiffs in *Winters* and *Miller* argued that "if the parts are off the shelf, the whole must be as well." *Miller,* 275 F.3d at 419. *Winters* and *Miller* rejected this argument on the ground that the final composition of the off-the-shelf components, developed under a government formula, resulted in a new previously unknown product called "Agent Orange," that was manufactured and sold exclusively to the military. *Miller,* 275 F.3d at 419.

*Winters* and *Miller* do not apply to these welding rod cases. Unlike Agent Orange, the end-product welding rod consumables in the instant cases were not designed by and at the request of the military and are indisputably available for consumption by the general welding public.

### d. No Colorable Federal Defense Exists

The third prong of the *Mesa* test requires the Removing Defendants to

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 10 of 22

assert a colorable federal defense. The Removing Defendants assert two federal defenses: (1) the government contractor defense, and (2) the Defense Production Act defense. Neither defense supports removal.

### e. The Government Contractor Defense Is Inapplicable

The government contractor defense shields manufacturers from liability for alleged design defects in the production of military equipment. The defense also applies, in limited circumstances, in a failure to warn case. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). *Boyle v. United Technologies Corporation*, 487 U.S. 500 (1998) articulates the test for immunity under the government contractor defense. The test precludes state-law liability for design defects in military equipment when:

1) The United States approved reasonably precise specifications;

2) The equipment conformed to those specifications; and

3) The supplier warned the United States about the dangers and the use of the equipmentthat were known to the supplier but not to the United States.

*Id.* at 512. The government contractor defense allows the government's immunity from suit to benefit a contractor "where the performance of a discretionary function is at issue." *Id.* at 511.

The Sixth Circuit applied *Boyle*'s framework in *Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir. 1995)("*Tate 1*").[1] The court formulated a three-part test that

---

[1] *See also Landgraf v. McDonnell Douglas Helicopter Co.*, 993 F.2d 558 (6th Cir. 1993). 18

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 11 of 22

tracked *Boyle*, the "*Tate 1* test," for analyzing the government contractor defense in a failure to warn case. The Sixth Circuit stated:

> When state law would otherwise impose liability for a failure to warn of dangers in using military equipment, the law is displaced if the contractor can show:
>
> > (1) the United States exercised its discretion approved the warnings, if any;
> > (2) the contractor provided warnings that conformed to the approved warnings; and
> > (3) the contractor warned the United States of the dangers and the equipment's use about which the contractor knew, but the United States did not.

In this case, none of the three prongs of the *Tate 1* are satisfied.

With regard to the test's first prong, the Sixth Circuit recognized that the government's involvement in developing the warnings must "transcend rubber stamping." *Tate 1*, 55 F.3d at 1157. The government must go "beyond approval and actually determine[] for itself the warnings to be provided." *Id.* As subsequently articulated in *Tate v. Boeing Helicopters*, 140 F.3d 654 (6th Cir. 1998) ("*Tate 2*"), for the government to make the necessary informed determination, the first prong requires that the government "be both knowledgeable and concerned about the contents of the proposed warnings **before granting its approval**." 140 F.3d at 658 (emphasis added). Casual knowledge does not suffice. "The government is sufficiently knowledgeable when it has a complete enough understanding of the proposed warnings to reasonably recognize which hazards have been thoroughly addressed and which have not." *Id.* And government concern about warnings must be express. "The government is sufficiently concerned when it demonstrates a willingness to remedy or require the remedy of any inadequacies it finds in the proposed warnings." *Id.*

As discussed *supra*, the military played absolutely no part in developing

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 12 of 22

the warnings placed Defendants' welding rods. The industry developed the warnings. The government's passive role with respect to warnings manifests neither the knowledge nor the control the Sixth Circuit requires. The "continuous back and forth" review that court requires, *id.,* is plainly lacking.

*Tate 1's* second factor assures that the government contractor defense protects the governments, not the contractor's, exercise of discretion. If the manufacturer, and not the government, exercised discretion in determining the warnings to be given, the test's second factor is not met. To satisfy *Tate 1's* second condition, the Removing Defendants must establish that they developed warnings on welding rods "which conform to the warnings approved by the" Navy. *Tate 2,* 140 F.3d at 659. No proof exists that the Navy approved anything. The warnings on welding rods were developed by the industry. The manufacturing defendants had absolute discretion to determine the nature and extent of the warnings to be placed on the welding rod products. No government discretion was exercised in formulating the language to be used or the nature of the dangers to be disclosed. *Tate 1's* second factor is thus not met.

*Tate 1's* third factor encourages "frank communication to the government of the equipment's dangers and increases the likelihood that the government will make a well-informed judgment." *Tate 1,* 55 F.3d at 1157. It requires "a showing that the manufacturer `warned the United States [military] of the dangers in the equipment's use about which the contractor knew, but the United States [military] did not." *Tate 2,* 140 F.3d at 659. No evidence indicates that the industry informed the government of the dangers known to the industry of

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 13 of 22

manganese toxicity from exposure to manganese-laden welding rod fumes. The third requirement of *Tate 1* is not met.

In sum, the welding rods in the instant case indisputably were manufactured by private companies for use by the general welding public. The development of the welding rods and the warnings to be placed on them were left to the individual manufacturers' discretion. The Removing Defendants disclosed to no one, including the military, the dangers of manganese toxicity in the welding process. The military could not exercise its discretion in determining the extent and nature of warnings to be placed on welding consumables because, as Plaintiffs have alleged, Defendants suppressed the risks from everyone. Consequently, the Removing Defendants have failed to satisfy all three prongs of *Tate 1's* government-contractor-defense test.

### f. The Defense Production Act Defense Is Inapplicable

The Removing Defendants invoke the DPA, 50 App. U.S.C.A. § 2157, as a second colorable defense under *Mesa*'s third prong. The DPA immunizes contractors, under threat of criminal sanction to perform for the Defense Department, from certain liabilities stemming from the performance of those contracts. Under the DPA, fulfilling obligations to the Defense Department cannot trigger liability to others for breach of contract. The Act's immunity provision states:

> No person shall be liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this Act.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 14 of 22

50 App. U.S.C. § 2157.

The DPA does not provide a colorable defense in this failure-to-warn *tort* case. Rather, the Act merely allows government defense contractors to satisfy their obligations to the government without fear of civil liability to non-government contracting partners whose orders may be subordinated to the government's needs. Case law establishes the DPA's inapplicability to tort claims involving products not designed by the government.

In *Hercules Inc. v. The United States*, 24 F.3d 188 (Fed.Cir. 1994), *aff'd*, 526 U.S. 417 (1996), the Court of Appeals for the Federal Circuit ruled that "the protection provided by DPA § 707 extends *only to shield a contractor from breach of contract liability* arising as a consequence of such re-prioritization" [of scarce contractual supplies.] *Id.* at 204. (emphasis added). The Federal Circuit is of course the Circuit Court that most specializes in claims involving the federal government. And other cases, relied on by the *Hercules Inc.* court, reach the same conclusion. *Eastern Airlines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 997 (5th Cir. 1976) (DPA is simply declaratory of the common doctrine of impossibility), *citing, United States v. Texas Southern Constr. Co.*, 224 F.2d 289, 293 (5th Cir. 1955). Precedent in the Sixth Circuit is in accord. *In re Aircraft Litigation Frederick, Md., May 6, 1981*, 752 F.Supp. 1326, 1330 n.2 (S.D. Ohio 1990) ("This Court has found no case holding that [DPA] immunity extends to third parties' tort claims.").

This is a tort case without unique government design specifications, not a contract case. The DPA does not provide a colorable defense to the Plaintiffs'

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 15 of 22

failure-to-warn claims.[2]

### III. FEDERAL ENCLAVE JURISDICTION DOES NOT EXIST

The Removing Defendants assert Federal Enclave Jurisdiction, and cite *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952). In *Mater*, Plaintiff sued for personal injuries she sustained in whole within the boundaries of a fort located in the state of Georgia. *Id.* At 123. The Fifth Circuit held that the federal court had jurisdiction because the action resulting in injuries from defendants' negligence occurred within boundaries of fort. In *Akin v. Big Three Industries*, 851 F.Supp. 819 (E.D. Beaumont 1994), the court held federal jurisdiction existed because the injuries sustained occurred in whole on federal property. *Id.* At 822. The facts of this case are distinguishable.

The Federal Enclave Doctrine only applies to property purchased by the United States with the consent of the state Legislature.

The Removing Defendants have presented no evidence to establish that the Naval Air Station Corpus Christi is a Federal Enclave.

The Removing Defendants allege that Plaintiff Solis testified to no other exposure except that on federal property, citing his response to an interrogatory. However, the interrogatory asks for employment over the previous ten years, and the only place worked over the previous ten years was the navy base. However, looking at the petition, Mr. Solis welded from 1973, which clearly indicates that the injuries alleged did not occur in whole on the navy base. Mr. Solis's affidavit attached here to as Exhibit "A"

---

[2] A few cases recognize the DPA as providing a colorable defense for removal purposes. But the government involvement in the supervision of the design of the equipment or product at issue was plainly greater than that here. *E.g.*, *Miller v. Diamond Shamrock*, 275 F.3d 414 (5th Cir. 2001) (injuries from Agent Orange, a product designed by the military); *Crackau v. Lucent Technologies*, 2003 WL 21665135 (D.N.J. June 25, 2003) (injuries to radar technicians where government controlled the specifications for the radar systems at issue).

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 16 of 22

establishes that he had significant welding fume exposure before he ever began working at the navy base. This is a much admitted by Removing Defendants when they state that they have not had enough time to adequately investigate their defenses. This case is distinguishable from *Mater* and *Akin* in the Plaintiff Solis (it is important to note Solis is the only Plaintiff in the group that worked any at all on federal property) did not sustain the entirety of his injuries on the navy base. The Removing Defendants used a limited discovery response without further investigation.

This Court should not exercise federal jurisdiction based on the Federal Enclave Doctrine because this case does not fit the mold. The Removing Defendants should not be able to invoke such doctrine based solely on a limited interrogatory response without any further evidence.

### *IV. CONCLUSION*

Far from being federal officers or creators of unique military products, the Removing Defendants are manufacturers who made their existing products available for purchase by the Navy. The Removing Defendants have presented no evidence to this Court to support either Federal Enclave jurisdiction or Federal Officer jurisdiction. Mandatory abstention, discretionary abstention, and equitable considerations all support remand to state court.

For the reasons discussed, Plaintiffs' case removed to federal court should be remanded.

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 17 of 22

Respectfully submitted,

**WATTS LAW FIRM, L.L.P.**
Tower II Building
555 North Carancahua, Suite 1400
Corpus Christi, TX 78478-0801
(361) 887-0500
(361) 887-0055 (Fax)

By: _____

Mikal C. Watts
State Bar No. 20981820
Federal Bar No. 12419
Russell T. Abney
State Bar No. 00818100
Federal Bar No. 12040

**ATTORNEYS FOR PLAINTIFFS**

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 18 of 22

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded on this 25th day of November, 2003 in accordance with Federal Rules of Civil Procedure, via certified mail, return receipt requested, to the following counsel of record:

**VIA CMRRR 7003 0500 0003 6144 6395:**
Mr. Hugh P. Touchy
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521
**ATTORNEY FOR WELDINGHOUSE, INC.**

**VIA CMRRR 7003 0500 0003 6144 5282:**
Ms. Lynn Levitan
BROWN McCARROLL, L.L.P.
2000 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
**ATTORNEY FOR ILLINOIS TOOL WORKS, INC.**
**AND MILLER ELECTRIC MANUFACTURING CO., INC.**

**VIA CMRRR 7003 0500 0004 6538 1585:**
Ms. Rachel G. Clingman
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney
Suite 4300
Houston, TX 77010
**ATTORNEY FOR GENERAL ELECTRIC COMPANY**

**VIA CMRRR 7003 0500 0004 6538 1592:**
Ms. Lea F. Courington
GWINN & ROBY
1201 Elm Street
4100 Renaissance Tower
Dallas, TX 75270
**ATTORNEY FOR AMERICAN WELDING SOCIETY**

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 19 of 22

**VIA CMRRR 7003 0500 0004 6538 1608:**

Ms. Mary Alice Parsons

IRESON & WEIZEL, P.C.

Bank of America Center

700 Louisiana, Suite 1200

Houston, TX 77002

ATTORNEY FOR AERIFORM CORPORATION AND IWECO WELDING SUPPLY COMPANY, INC.

**VIA CMRRR 7003 0500 0004 6538 1615:**

Mr. William R. Stoughton

JENNER & BLOCK, L.L.C.

1717 Main Street

Suite 3150

Dallas, TX 75201

ATTORNEY FOR NATIONAL ELECTRIC MANUFACTURER'S ASSOCIATION

**VIA CMRRR 7003 0500 0004 6538 1622:**

Mr. Joe Michael Russell

KENT, GOOD & ANDERSON, P.C.

301 North Market Street

Suite 650

Dallas, TX 75202

ATTORNEY FOR J. W. HARRIS CO., INC.

**VIA CMRRR 7003 0500 0004 6538 1639:**

Mr. James G. Martingano

MEHAFFY & WEBER

500 Dallas Street

Suite 1200

Houston, TX 77002

ATTORNEY FOR SELECT ARC, INC.

**VIA CMRRR 7003 0500 0003 6144 5268:**

Mr. John G. Bissell

STRONG PIPKIN BISSELL & LEDYARD, L.L.P.

1111 Bagby, Suite 2300

Houston, TX 77002

ATTORNEY FOR THE LINCOLN ELECTRIC COMPANY,
HOBART BROTHERS COMPANY, THE ESAB GROUP, INC.,
AIRCO, INC., PRAXAIR INC., TDY INDUSTRIES, INC.,
VIACOM, INC., WESTINGHOUSE ELECTRIC
CORPORATION, A.O. SMITH CORPORATION,
SANDVIK, INC., AIRGAS-GULF SATES, INC.,
AIRGAS-SOUTHWEST, INC.; UNION CARBIDE CORPORATION,
UNION CARBIDE CHEMICALS AND
PLASTICS COMPANY, INC. AND EUTECTIC CORPORATION

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 20 of 22

**VIA CMRRR 7003 0500 0003 6144 5275:**

Mr. Darrell Barger

HARTLINE, DACUS, BARGER, DREYER & KERN, L.L.P.

One Shoreline Plaza

800 North Shoreline Boulevard

Suite 2000

Corpus Christi, TX 78404

**ATTORNEY FOR THE LINCOLN ELECTRIC COMPANY,
HOBART BROTHERS COMPANY, THE ESAB GROUP, INC.,
AIRCO, INC., PRAXAIR INC., TDY INDUSTRIES, INC.,
VIACOM, INC., WESTINGHOUSE ELECTRIC
CORPORATION, A.O. SMITH CORPORATION,
SANDVIK, INC., AIRGAS-GULF SATES, INC.,
AIRGAS-SOUTHWEST, INC.; UNION CARBIDE CORPORATION,
UNION CARBIDE CHEMICALS AND
PLASTICS COMPANY, INC. AND EUTECTIC CORPORATION**

**VIA CMRRR 7003 0500 0004 6538 1646:**

Mr. Ewing E. Sikes, III

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

55 Cove Circle

Brownsville, TX 78521

**ATTORNEY FOR ACETYLENE OXYGEN INC.
D/B/A ACETYLENE OXYGEN COMPANY**

**VIA CMRRR 7003 0500 0004 6538 1653:**

Ms. Ellen G. Reynard

ADAMS & COFFEY

Century Tower

550 Fannin, Suite 800

Beaumont, TX 77726

**ATTORNEY FOR DELORO STELLITE COMPANY, INC.**

**VIA CMRRR 7003 0500 0003 6144 6388:**

Mr. Hubert Oxford, III

BENCKENSTEIN & OXFORD, L.L.P.

3535 Calder Avenue

Suite 300

Beaumont, TX 77704

**ATTORNEY FOR AIR LIQUIDE AMERICA FOUNDATION, INC.
AND BIG THREE INDUSTRIES, INC.**

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 21 of 22

**VIA CMRRR 7003 0500 0003 6144 6371:**

Mr. E. Stratton Horres, Jr.
Ms. Lisa C. Nolley
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
5000 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
**ATTORNEY FOR MATHESON TRI-GAS, INC.**

**VIA CMRRR 7003 0500 0003 6144 6401:**

Mr. Tony Canales
CANALES & SIMONSON
2601 Morgan Avenue
P.O. Box 5624
Corpus Christi, TX 78465
**ATTORNEY FOR GENERAL ELECTRIC COMPANY**

Russell T. Abney

*Claudio B. Arredondo, et al v. The Lincoln Electric Company, et al*
Plaintiffs' Motion to Remand and Brief in Support Thereof
Page 22 of 22

A

AFFIDAVIT

STATE OF TEXAS

COUNTY OF NUECES

My name is Ernesto G. Solis, I am over the age of 21 and I am competent to give this affidavit. The facts contained in this affidavit are true and correct and are based on my personal knowledge.

I am fifty-four years old. I was born in Laredo, Texas and have lived in Corpus Christi, Nueces County,Texas for the past 24 years.

I began being exposed to welding fumes in 1973 as a welder's helper and from 1973 until 1979 I was a pipe welder for HB Zachery in Laredo, Texas, Mercy Hospital in Laredo, Texas and Brown & Root, Inc. of Corpus Christi, Texas.

I also welded for Laredo Junior College in the evenings from 1974 thru 1978 as a student welder.

As a pipe welder, I was exposed to a lot of welding fumes. This was before I was exposed to any welding fumes at the Naval Air Station Corpus Christi. My welding on the Naval Air Station Corpus Christi has been limited to fabricating for buildings, steam lines for heating and chilled water lines. I have never welded on any military vessel, plane, weapons or other military equipment.

The welding rods used by the Naval Air Station Corpus Christi were purchased from local commercial suppliers and were not manufactured to any unique military specifications. These same rods are available and sold to the public in the same containers that they were supplied to the Naval Air Station Corpus Christi.

Further affiant sayeth not.

_Ernesto Solis_

Ernesto G. Solis

SWORN AND SUBSCRIBED BEFORE ME the undersigned authority, on

this the 21st day of November, 2003.

_Julia S. Salinas_

NOTARY PUBLIC
STATE OF TEXAS

JULIA S. SALINAS
Notary Public
STATE OF TEXAS
My Comm Exp 06-22-2004